1  **WO**

2

3

4

5

6        **IN THE UNITED STATES DISTRICT COURT**

7           **FOR THE DISTRICT OF ARIZONA**

8

9  Ryan Nelson,                        )    No. CV-12-1620-PHX-SMM
                                       )
10           Plaintiff/Counterdefendant,  )    **MEMORANDUM OF DECISION AND**
                                       )                  **ORDER**
11  v.                                   )
                                       )
12  Navigator Insurance Company, et al., )
                                       )
13           Defendants/Counterclaimants.)
                                       )
14  _____)

15        Before the Court are Defendants' Motion for Partial Summary Judgment on Breach

16  of Contract (Doc. 36), and Plaintiff's Motion for Rule 56(d) Relief (Doc. 51).  The motions

17  are fully briefed.  (Doc. 39, 41, 50, 51, 52.)  After considering the parties' briefing and oral

18  argument before the Court, the Court will grant Defendants' motion for partial summary

19  judgment, and deny Planitiff's motion for Rule 56(d) relief.

20                          **BACKGROUND**

21        Plaintiff Ryan Nelson brings this action against Defendants Navigator Insurance

22  Company ("Navigator") and NIC Insurance Company ("NIC"), alleging breach of contract

23  and breach of the covenant of good faith and fair dealing.  (Doc. 13.)

24        Plaintiff was an employee of Ikon Steel, L.L.C. ("Ikon"), a company owned by

25  Timothy and Leanne Kirby.  (Doc. 40 at 1.)  Ikon, located in Apache Junction, Arizona, is

26  a steel-fabrication factory which manufactures steel for installation in commercial buildings.

27  (Doc. 37 at 2.)  On September 23, 2006, Plaintiff was severely injured at work, when a chain

28  and pulley assembly that was being used to transport a steel I-beam broke, causing the beam

1    to fall on and crush his legs.  (Id. at 4.)

2          Plaintiff alleges that at the request of persons investigating the accident, Ikon, acting

3    through its employees, agreed to and then undertook to preserve the chain and pulley

4    assembly so that it could later be examined for defects that may have caused its failure.  (Id.)

5    When investigators later sought to obtain the assembly from Ikon however, they discovered

6    that Ikon employees had negligently disposed of the assembly.  (Id.)

7          Plaintiff subsequently filed suit against Ikon and Timothy Kirby on September 23,

8    2008, in the Pinal County Superior Court of Arizona ("the underlying suit").  (Doc. 40 ¶ 24.)

9    In the underlying suit, Plaintiff alleged two counts: (1) "Tortious Interference; Obstruction

10   of or Interference with Legal Remedies; Negligent Spoliation"; and (2) "Intentional

11   Interference with Legal Remedies and Intentional Spoliation."  (Doc. 1-1 at 14-18.)

12         Timothy Kirby and Ikon tendered defense of the underlying suit to Defendants on

13   February 11, 2009.  (Doc. 40 ¶ 25.)  Ikon was insured by Defendants in the form of two

14   policies: a commercial general liability ("CGL") policy issued by NIC, and a commercial

15   excess liability policy issued by Navigators.  (Doc. 37, ¶¶ 23, 27.)

16         The CGL policy provided that NIC "will pay those sums that the insured becomes

17   legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which

18   this insurance applies." (Id. ¶ 29.)  The CGL policy defined "bodily injury" as "bodily injury,

19   sickness or disease sustained by a person, including death resulting from any of these at any

20   time," and defined "property damage" as "[p]hysical injury to tangible property," or "[l]oss

21   of use of tangible property that is not physically injured."  (Id. ¶¶ 31-32.)

22         The CGL policy also contained the following three relevant exclusions.  "Exclusion

23   E" precluded coverage for: "'Bodily injury' to: (1) An 'employee' of the insured arising out

24   of and in the course of: (a) Employment by the insured; or (b) Performing duties related to

25   the conduct of the insured's business."  (Id. ¶ 34.)  "Exclusion I" precluded coverage for

26   "bodily injury" or "property damage" "expected or intended from the standpoint of the

27   insured."  (Id. ¶ 36.)  "Exclusion J" precluded coverage for: "'Property damage' to: (1)

28   Property you own . . . ; (4) Personal property in the care, custody or control of the insured."

1   (Id. ¶ 35.)

2       Defendants refused Ikon's tender of defense of the underlying suit and instead

3   disclaimed coverage under the CGL policy on February 13, 2009.  (Doc. 40 ¶ 26.)

4   Defendants further refused the tender and disclaimed coverage under the excess liability

5   policy on March 4, 2009.  (Id. ¶ 27.)  Defendants disclaimed coverage on the grounds that

6   the underlying suit did not assert a claim for damages because of "bodily injury" or "property

7   damage."  (Doc. 1-5 at 67.)

8       In their letter refusing tender, NIC stated that Plaintiff's alleged injury in the

9   underlying suit was to intangible property (Plaintiff's lost potential claim against the chain

10  manufacturer) rather than tangible property, and thus was not covered under the property

11  damage clause's "loss of use" term in the policy.  (Id. at 68.)  Furthermore, NIC stated that

12  there was no coverage under the "property damage" clause, because exclusion "j" precluded

13  coverage for property owned by the insured, or property under the care, custody, or control

14  of the insured.  (Id.)  NIC further stated that no coverage existed for Ikon against Plaintiff's

15  claim for intentional spoliation, because exclusion "I" precluded coverage for intentional

16  acts.  (Id.)

17      Ikon proceeded with the underlying suit without Defendants' participation in its

18  defense.  Ikon subsequently moved to dismiss the underlying suit for failure to state a claim

19  upon which relief could be granted.  (Doc. 37 ¶ 54.)  On July 3, 2009, prior to oral argument

20  on the motion to dismiss, Plaintiff's attorney provided Ikon with a draft Damron agreement.

21  (Id. ¶ 55.)  Oral argument on the motion to dismiss was stayed, and on December 14, 2009,

22  the Damron agreement was signed.  (Id. ¶¶ 56, 58.)  The Damron agreement contained a

23  covenant not to execute the judgment against Ikon and Kirby; in exchange for the covenant,

24  Ikon and Kirby agreed to withdraw their motion to dismiss.  (Id. ¶ 59.)

25      The underlying suit proceeded to a default judgment hearing on July 26, 2010.  (Id.

26  ¶ 60.)  In attendance at the hearing were Plaintiff and two of Plaintiff's attorneys, one serving

27  as a "valuations expert witness."  (Id.)  Following the hearing, the Court entered default

28  judgment in the amount of $4.2 million, which judgment was subsequently entered on

1    November 1, 2011.  (Id. ¶¶ 61, 62.)

2         Plaintiff thereupon brought this action pursuant to the Damron agreement obtained

3    in the underlying suit, asserting that Defendants breached their insurance contracts with Ikon

4    by failing to defend the underlying suit, and acted in bad faith in denying coverage for the

5    underlying suit.  (Doc. 13.)  Defendants answered the Complaint with two counterclaims, for

6    declaratory judgment that the CGL Policy and Excess Policy did not provide coverage for

7    the underlying complaint, and declaratory judgment that the $4.2 million stipulated judgment

8    is invalid and unenforceable.  (Doc. 1-4 at 27.)  Now, Defendants bring this motion for

9    partial summary judgment against Plaintiff's claim for breach of contract, and partial

10   summary judgment in favor of Defendants' claims for declaratory judgment, arguing that the

11   stipulated judgment below is unenforceable, and that Plaintiff's claim for breach of contract

12   fails as a matter law.  (Doc. 36.)

13                           **LEGAL STANDARD**

14        **I.      Partial Summary Judgment**

15        A court must grant summary judgment if the pleadings and supporting documents,

16   viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine

17   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

18   Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.

19   Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines

20   which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also

21   Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit

22   under the governing law will properly preclude the entry of summary judgment."  Anderson,

23   477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that

24   a reasonable jury could return a verdict for the nonmoving party."  Id.; see Jesinger, 24 F.3d

25   at 1130.

26        A principal purpose of summary judgment is "to isolate and dispose of factually

27   unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

28   against a party who "fails to make a showing sufficient to establish the existence of an

                                    - 4 -

1    element essential to that party's case, and on which that party will bear the burden of proof

2    at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.

3    1994). The moving party need not disprove matters on which the opponent has the burden

4    of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment

5    need not produce evidence "in a form that would be admissible at trial in order to avoid

6    summary judgment." Id. at 324. However, the nonmovant must set out specific facts

7    showing a genuine dispute for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

8    Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,

9    1049 (9th Cir. 1995).

10           **II.  Breach of Contract**

11           Because jurisdiction here is based on diversity of citizenship, the Court applies the

12   substantive law of Arizona to resolve the insurance coverage issues. See Erie v. Tompkins,

13   304 U.S. 64, 78 (1938). In an action for breach of contract, the plaintiff has the burden of

14   proving "the existence of a contract, breach of the contract, and resulting damages."

15   Chartone, Inc. v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing

16   Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz.App. 48, 423 P.2d 124 (1976)).

17           Provisions of insurance contracts should be construed according to their plain and

18   ordinary meaning. National Bank v. St. Paul Fire & Marine Ins. Co., 193 Ariz. 581, 584, 975

19   P.2d 711, 714 (App. 1999). The interpretation of an insurance contract is a question of law,

20   as is the question of whether the contract's terms are ambiguous. Id. In Arizona, courts must

21   construe a clause which is subject to differing interpretations by "examining the language of

22   the clause, public policy considerations, and the purpose of the transaction as a whole." State

23   Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

24   Unambiguous provisions must be given effect as written. Benevides v. Ariz. Prop. & Cas.

25   Ins. Guar. Fund, 184 Ariz. 610, 613, 911 P.2d 616, 619 (1995).

26           An insurance policy is ambiguous if there is more than one reasonable interpretation

27   of its terms. Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co., 225 Ariz. 194,

28   200, 236 P.3d 421, 427 (App. 2010). Arizona courts may consider extrinsic evidence to

1    identify and resolve ambiguities in an insurance policy.  Lennar Corp. v. Transamerica Ins.,
2    Co., 227 Ariz. 238, 244, 256 P.3d 635, 641 (App. 2010).  However, "neither language nor
3    apparent ambiguity alone is dispositive." Wilson, 162 Ariz. at 257, 782 P.2d at 733.  "If a
4    clause appears ambiguous, [the court] interpret[s] it by looking to legislative goals, social
5    policy, and the transaction as a whole. If an ambiguity remains after considering these
6    factors, [the court] construe[s] it against the insurer." First Am. Title Ins. Co. v. Action
7    Acquisitions, LLC, 218 Ariz. 394, 397, 187 P.3d 1107, 1110 (2008) (citations omitted); see
8    also Wilshire Ins. Co. v. S.A., 224 Ariz. 97, 99, 227 P.3d 504, 506 (App. 2010) ("We
9    construe the clause against the insurer, however, if ambiguity remains after we apply those
10   interpretive guides.").

11        **A.    Damron Agreements**

12        In Damron v. Sledge, the Arizona Supreme Court held that when an insurer fails to
13   defend its insured, the duty of cooperation does not prevent the insured from entering into
14   a settlement with the claimant and assigning his or her rights under the policy to the claimant.
15   105 Ariz. 151, 460 P.2d 997 (1969); see also United Servs. Auto. Ass'n v. Morris, 154 Ariz.
16   113, 119, 741 P.2d 246, 252 (1987) (insured may enter similar agreement if insurer defends
17   but reserves its right to dispute coverage).

18        A settlement made under such circumstances, however, must not be fraudulent,
19   collusive, or otherwise against public policy. Arizona Property and Cas. Ins. Guar. Fund v.
20   Helme, 153 Ariz. 129, 138, 735 P.2d 421, 460 (1987).  The courts have recognized the risks
21   inherent in these types of settlements: "the insured has little incentive to minimize the amount
22   of the judgment, and the ability of the insured to subject an insurer to tort damages in excess
23   of the policy limits creates the opportunity for collusive settlements that bear little relation
24   to the merits of the underlying case." Leflet v. Redwood Fire and Cas. Ins. Co., 226 Ariz.
25   297, 300, 247 P.3d 180, 183 (App. 2011).

26        However, in the absence of fraud or collusion, the general rule is that "an insurance
27   company which refuses to defend its insured is bound by a judgment against its insured with
28   respect to all matters which were litigated or could have been litigated in that action." State

1   Farm Mut. Auto. Ins. Co. v. Paynter, 122 Ariz. 198, 200, 593 P.2d 948, 950 (App. 1979).

2   By refusing to defend, the insurer takes the risk that it may have erred in determining that the

3   policy did not provide coverage," is bound by the judgment, and is not entitled to relitigate

4   the merits of the claim. Id. at 200-01, 593 P.2d at 950-51.

5        **B.      Duty to Defend**

6        Under Arizona law, an insurer has a duty to "defend the insured against any claim

7   'potentially covered by the policy.'" Pueblo Santa Fe Townhomes Owners' Ass'n v.

8   Transcon. Ins. Co., 218 Ariz. 13, 19, 178 P.3d 485, 491 (App. 2008). The language of the

9   insurance policy controls the scope and extent of the insurer's duty to defend. Cal. Cas. Ins.

10  Co. v. State Farm Mut. Auto. Ins. Co., 185 Ariz. 165, 168, 913 P.2d 505, 508 (App. 1996).

11  The duty to defend arises "at the earliest stages of the litigation and generally exists

12  regardless of whether the insured is ultimately found liable." Regal Homes, Inc. v. CNA Ins.,

13  217 Ariz. 159, 164, 171 P.3d 610, 615 (App. 2007). The duty to defend focuses on the facts

14  alleged rather than the legal characterization of the causes of actions alleged in the complaint

15  against the insured. Kepner v. Western Fire Ins. Co., 109 Ariz. 329, 331, 509 P.2d 222, 224

16  (1973).

17       **C.      The Doctrine of Reasonable Expectations**

18       In Arizona, the doctrine of reasonable expectations provides that "a contract term is

19  not enforced if one party has reason to believe that the other would not have assented to the

20  contract if it had known of that term." First Am. Title Ins. Co. v. Action Acquisitions, LLC,

21  218 Ariz. 394, 400, 187 P.3d 1107, 1113 (2008) (citing Darner Motor Sales, Inc. v. Universal

22  Underwriters Inc. Co., 140 Ariz. 383, 391-92, 682 P.2d 388, 396-97 (1984). The drafter's

23  reason to believe that the signing party would not have assented to the term:

> may be (1) shown by the parties' prior negotiations, (2) inferred
> from the circumstances of the transaction, (3) inferred  from the
> fact that the term is bizarre or oppressive, (4) inferred from the
> fact that the term eviscerates the non-standard terms to which
> the parties explicitly agreed, or (5) inferred if the  term
> eliminates the dominant purpose of the transaction.

State Far Fire & Cas. Ins. Co. v. Grabowski, 214 Ariz. 188, 193, 150 P.3d 275, 280 (App.

- 7 -

1   2007) (citing Darner, 140 Ariz. at 392, 682 P.2d at 397).

2   A court may refuse to enforce even unambiguous contract terms in adhesion contracts,

3   in a limited variety of situations:

4       1. Where the contract terms, although not ambiguous to the
5       court, cannot be understood by the reasonably intelligent
    consumer who might check on his or her rights, the court will
6       interpret them in light of the objective, reasonable expectations
    of the average insured;

7       2. Where the insured did not receive full and adequate notice of
    the term in question, and the provision is either unusual or
8       unexpected, or one that emasculates apparent coverage;

9       3. Where some activity which can be reasonably attributed to the
    insurer would create an objective impression of coverage in the
10      mind of a reasonable insured;

11      4. Where some activity reasonably attributable to the insurer has
    induced a particular insured reasonably to believe that he has
12      coverage, although such coverage is expressly and
    unambiguously denied by the policy.

13

14  Gordinier v. Aetna Cas. & Sur. Co., 154 Ariz. 266, 272, 742 P.2d 277, 283 (1987) (internal

15  citations omitted).

16  **DISCUSSION**

17  Defendants argue that Plaintiff's claim for breach of contract fails as a matter of law

18  because the Damron agreement it is based upon was collusive and outside the permitted

19  parameters of such agreements in Arizona, and because Defendants had no obligation to

20  defend Ikon in the underlying suit.  (Doc. 36 at 1-3.)

21  **Enforceability of the Damron Agreement**

22  Defendants assert that the clear state of the law in Arizona at the time Plaintiff entered

23  into the Damron agreement in the underlying suit established that Arizona does not recognize

24  a cause of action for spoliation of evidence.  (Id. at 9.)  In support of this claim, Defendants

25  note that when Plaintiff filed the underlying suit against Ikon, case law explicitly stated that

26  Arizona did not recognize a cause of action for first-party spoliation of evidence.  See Tobel

27  v. Travelers Ins. Co., 195 Ariz. 363, 371, 988 P.2d 148, 156 (App. 1999); Souza v. Fred

28  Carries Contracts, Inc., 191 Ariz. 247, 249 n.1, 955 P.2d 3, 5 n.1 (App. 1997).  Furthermore,

1   four months before Plaintiff entered into the <u>Damron</u> agreement in the underlying suit, the

2   Arizona Court of Appeals again "expressly rejected a cause of action for [third party]

3   negligent spoliation of evidence" in <u>Lips v. Scottsdale Healthcare Corp.</u>, 222 Ariz. 346, 214

4   P.3d 434 (App. 2009) (hereafter referred to as "<u>Lips I</u>"). Then, two months before the default

5   judgment hearing in the underlying suit, the <u>Lips</u> opinion was affirmed by the Arizona

6   Supreme Court in <u>Lips v. Scottsdale Healthcare Corp.</u>, 224 Ariz. 266, 229 P.3d 1008 (2010)

7   (hereafter referred to as "<u>Lips II</u>").

8           Thus, according to Defendants, the <u>Damron</u> agreement should be held unenforceable

9   against them as a matter of law due to the collusive nature of the agreement, it being one

10  which manufactures a cause of action that does not exist in Arizona. Plaintiff responds to

11  this argument by challenging Defendants' characterization of the settlement as collusive.

12  According to Plaintiff, the settlement was not collusive because contrary to what Defendants

13  now argue, it was not certain that Plaintiff's claim for spoliation was not actionable at the

14  time Ikon tendered defense of the underlying suit.

15          In support of this argument, Plaintiff notes that <u>Lips I</u> was on appeal before the

16  Arizona Supreme Court at the time the <u>Damron</u> agreement was executed, and thus that the

17  parties could not have known whether <u>Lips II</u> would affirm or overturn the decision in <u>Lips</u>

18  <u>I</u>. (Doc. 39 at 5.) Plaintiff argues therefore that Defendants' coverage obligation was not so

19  certain as to enable Defendants to now claim that at the time the <u>Damron</u> agreement was

20  crafted, Plaintiff's case for spoliation of evidence was not recognized in Arizona.

21          More damaging to Defendants' contention that the <u>Damron</u> agreement was collusive,

22  however, is the fact that the <u>Lips</u> cases dealt only with whether Arizona recognized or would

23  recognize a cause of action for **negligent** spoliation of evidence. As Plaintiff notes, the court

24  in <u>Lips II</u> explicitly stated that it did not decide "whether to recognize a tort of third-party

25  intentional spoliation, because that tort requires an allegation not made in this case – that the

26  defendant intended to harm the plaintiff's interests." 224 Ariz. at 267, 229 P.3d at 1009.

27          The Court agrees with Plaintiff. Plaintiff correctly points out that Arizona case law

28  prior to the <u>Lips</u> cases dealt with first-party spoliation instead of third-party spoliation, which

1    undermines Defendants' contention that Arizona clearly established that no cause of action

2    existed for third-party negligent spoliation of evidence.  Furthermore, although it is true that

3    the <u>Lips I</u> decision was binding precedent upon the court in the underlying suit, <u>Lips I</u> only

4    rejected a cause of action for negligent spoliation, which operated against only one of

5    Plaintiff's claims in the underlying suit and was of no direct impact on the potential viability

6    of Plaintiff's claim for intentional spoliation.

7        Accordingly, the Court disagrees with Defendants that the execution of the <u>Damron</u>

8    agreement in the underlying suit was collusive.  Defendant insurers who fail to defend an

9    insured under a reservation of rights are generally precluded from later collaterally attacking

10   a <u>Damron</u> agreement reached between the insured and a third-party settling the underlying

11   claim.  Here, Defendants have failed to establish fraud or collusion in the execution of the

12   <u>Damron</u> agreement in the underlying suit.  In essence, Defendants' arguments against the

13   agreement amount to an assertion that Ikon did not properly defend against Plaintiff's claim

14   in the underlying suit by failing to fully litigate the motion to dismiss.  Arizona law is clear

15   that while some exceptional cases require the Court to allow insureds to broach the

16   reasonableness of such settlements in collateral actions, a mere argument that the insured did

17   not exhaust available defenses will not operate to invalidate the settlement.

18       This is precisely such a case.  As the court succinctly stated in <u>Paynter</u>:

19           The net effect of the [insurer]'s actions in this case was to
             permit a judgment to be entered without litigating a potential
20           defense. [The insurer]'s argument that the defendant should
             have raised all matters relating to a potential defense is
21           tantamount to a contention that the insured was required to offer
             vigorous defense at his own expense after his insurer had
22           breached its contractual obligation to provide such a defense.
             This contention flies in the face of <u>Damron v. Sledge</u>, <u>supra</u>,
23           holding that an abandoned insured may enter into a reasonable
             agreement limiting his liability in order to avoid litigation of the
24           claim at his own expense.

25   122 Ariz. at 201, 593 P.2d 951.  Were the Court to allow Defendants to collaterally attack

26   the <u>Damron</u> agreement here, the Court would be disregarding the policy reasons behind

27   <u>Damron</u> agreements as a whole, and allowing Defendants to refuse to defend insureds with

28   impunity, safe in the knowledge that they could always later collaterally attack any <u>Damron</u>

1   agreement by arguing that the agreement was "collusive" because the insured did not fully
2   pursue an available defense.  Thus, the Court finds that the <u>Damron</u> agreement in this case
3   is enforceable against Defendants.  Accordingly, the Court will deny Plaintiff's motion for
4   partial summary judgment as to Defendants' claim for a declaratory judgment that the $4.2
5   million judgment is invalid and unenforceable.

6                    **Defendants' Duty to Defend the Underlying Suit**

7          Defendants alternatively seek partial summary judgment against Plaintiff's breach of
8   contract claim, and summary judgment in favor of their own counterclaim for declaratory
9   judgment, on the grounds that they had no obligation to defend Ikon in the underlying suit.
10  (Doc. 36 at 10.)  Defendants argue that the CGL policy issued to Ikon clearly did not provide
11  coverage for economic loss, but only for damages arising from "bodily injury" and "property
12  damage."  Thus, Defendants argue that Plaintiff's claim for spoliation of evidence, whether
13  negligent or intentional, did not fall under the policy, and Defendants properly denied
14  coverage and declined to defend Ikon.

15         The Court agrees with Defendants that the underlying suit was a claim for economic
16  loss, rather than a claim for bodily injury or property damage.  As the Court in <u>Lips II</u> clearly
17  stated, a claim for spoliation of evidence alleges "purely pecuniary injury rather than any
18  injury to [] person or property."  224 Ariz. at 268, 229 P.3d at 1010.  The CGL policy
19  provided no coverage for damage to intangible property, which is exactly the damage
20  Plaintiff sued Ikon for in the underlying suit – damage to his intangible expectation of
21  recovery in a potential future products liability claim against the chain manufacturer.
22  Accordingly, the Court agrees with Defendants that the CGL policy on its face did not
23  provide coverage for the underlying spoliation suit.

24         Plaintiff argues, however, that the doctrine of reasonable expectations operates to
25  expand Ikon's coverage in this case, and thus that Defendants were obligated to defend Ikon
26  in the underlying suit.  (Doc. 39 at 7.)  Plaintiff contends that all four of the situations listed
27  by the court in <u>Gordinier</u> are present here and demonstrate that Ikon's reasonable
28  expectations were that it would be covered for claims such as those brought by Plaintiff in

1   the underlying suit.  (Id. at 12.)

2        First, Plaintiff argues that a typical consumer who read Defendants' policies would

3   not understand that the policies "drew a distinction between liability for tangible property

4   damage and liability for losing tangible evidence that, in turn, impairs an intangible chose

5   in action."  (Id.)  Thus, according to Plaintiff, the average insured would expect coverage

6   under these circumstances.  (Id.)

7        The Court disagrees.  "Tangible" versus "intangible" is not a distinction which the

8   Court finds "cannot be understood by the reasonably intelligent consumer who might check

9   on his or her rights."  See Gordinier, supra.  The difference between tangible and intangible

10  property is commonly understood, and Plaintiff's conclusory objection to the contrary is

11  insufficient to allow the Court to find that the policy term is unenforceable.

12        Second, Plaintiff argues that Ikon did not receive advance notice of "the exclusions

13  or of the policy interpretations that Defendants now offer to defeat coverage," and moreover

14  that Defendants' "various alternative arguments against coverage demonstrate that the policy

15  terms and interpretations relied on are bizarre, oppressive and emasculate apparent coverage,

16  at least in the context of a spoliation claim."  (Id. at 13)

17        The Court disagrees, and finds that Plaintiff fails to demonstrate that Ikon lacked

18  advance notice of the policy terms and exclusions that Defendants relied upon to deny

19  coverage.   NIC's letter denying coverage clearly indicated that the primary reason

20  Defendants would not defend the underlying suit was that Plaintiff's claim for spoliation of

21  evidence was not a claim for damages for "bodily injury" or "property damage" as provided

22  in the policy.

23        The denial letter plainly stated the reasoning behind this assertion: that Plaintiff's

24  claims for spoliation were claims not for injury to his person or to his tangible property, but

25  rather claims for damages resulting from his intangible loss of the potential future products

26  liability claim he could have filed against the chain manufacturer.  Thus, the denial was

27  predicated upon the main terms of the policy – the definitions of "bodily injury" and

28  "property damage" in the contract – and did not rely on any bizarre, oppressive, or coverage-

eviscerating terms.

Third, Plaintiff argues that the written insurance quotes Ikon received from Defendants purported to contain a list of policy exclusions, but did no contain the exclusions relied on by Defendants to defeat coverage.  (<u>Id.</u> at 14.)  According to Plaintiff, the documents relied upon by Ikon in entering the insurance contract are "reasonably and objectively interpreted to promise six million dollars of 'general' liability and excess coverage under the facts alleged in [Plaintiff's underlying] complaint." (<u>Id.</u>)  Thus, Plaintiff contends that "activity reasonably attributed to [D]efendants created an objectively reasonable impression of coverage in the mind of the average insured." (<u>Id.</u>)

Fourth, Plaintiff argues that the above conduct by Defendants induced Ikon in particular to reasonably believe that it had coverage for Plaintiff's claim.  (<u>Id.</u>)

The Court disagrees with Plaintiff; Plaintiff fails to present sufficient evidence by which a jury could find that Defendants created an objectively reasonable impression in the mind of the average insured of coverage for claims like Plaintiff's, or that Defendants induced Ikon to reasonably believe that it would have  coverage for such claims.

The evidence Plaintiff musters in support of his position consists of the deposition testimony of Ms. Kara Poole, the Ikon employee primarily responsible for purchasing the insurance policies at issue.  Plaintiff rests its argument on the fact that Ms. Poole apparently informed Ikon's insurance agent that Ikon needed "full liability coverage," and was never informed by the insurance agent "of any policy term that would preclude coverage for [Plaintiff's] claims. (Doc. 39 at 14-15.)  According to Plaintiff, the insurance proposal sent to Ikon "promised general liability coverage, subject only to specific enumerated exclusions, none of which apply under these facts." (<u>Id.</u> at 15.)  Thus, Plaintiff argues, Defendants' agent acted in a way that would induce a reasonable insured, and did induce Ikon, to believe that a claim for spoliation would be covered under the policy.

The Court finds Plaintiff's argument on this point to be without merit. Ms. Poole was experienced in the purchasing of insurance, and had done so for Ikon since 2000, prior to which she was a secretary for an insurance agent. (Doc. 37 ¶¶ 9-10.) Ikon had previously

1    purchased CGL policies from 2000 to 2005, and as such the policy purchased at issue here

2    was not Ikon's first experience with purchasing a CGL policy.  (Id. ¶ 26.)  After receiving

3    the insurance proposal from Ikon's insurance agent, which referenced the CGL policy at

4    issue here, Ms. Poole signed the proposal.  (Id. ¶ 24.)  Thereafter, NIC issued to Ikon the

5    CGL policy, of which Ms. Poole admits she received a copy.  (Doc. 37-2 at 89.)  Ms. Poole

6    did not read the policy.  (Id. at 89-90.)  Ms. Poole admits that she never indicated to the

7    insurance agent that Ikon sought coverage for spoliation suits, nor did the insurance agent

8    ever indicate that the policies listed in the insurance proposal provided coverage for

9    spoliation suits.  (Id. at 87-88.)

10        Plaintiff's evidence in support of his reasonable expectations argument fails to

11   establish an issue of material fact by which the jury could find that Ikon reasonably believed

12   it was covered for spoliation suits.  Ms. Poole, and any reasonable insurance purchaser,

13   would reasonably have known that the insurance proposal Ms. Poole reviewed while in the

14   process of purchasing the CGL policy was not the policy itself.  Ms. Poole did not review the

15   CGL policy itself to review the terms of coverage and exclusions, as a reasonable purchaser

16   of insurance purchaser would have done.  Nor did Defendants take any action which would

17   have induced Ms. Poole to believe that the CGL policy provided coverage for spoliation

18   suits.

19        Thus, Plaintiff fails to establish that Ikon had a reasonable expectation of coverage for

20   the underlying suit.  Because the Court agrees with Defendants that the CGL policy provided

21   no coverage for the underlying suit, and Ikon had no reasonable expectation of such

22   coverage, Plaintiff's claim for breach of contract fails as a matter of law and is suitable for

23   summary judgment.  Therefore, the Court will grant Defendants' motion for summary

24   judgment against Plaintiff's claim for breach of contract, and grant Defendants' motion for

25   summary judgment in favor of its claim for declaratory judgment of no coverage.

26        **Plaintiff's Motion for Rule 56(d) Relief**

27        Plaintiff filed his motion for relief pursuant to Rule 56(d), FED.R.CIV.P., on May 15,

28   2013, approximately one week prior to the date scheduled for oral argument on Defendants'

1    motion for partial summary judgment. (Doc. 51.) In the motion, Plaintiff requested that the

2    Court delay the oral argument and any ruling on Defendants' motion in order to allow

3    Plaintiff to personally appear at oral argument on Defendants' motion, and to allow Plaintiff

4    the opportunity to obtain expert testimony "on the format and clarity of defendants' policy

5    form and on the objectively reasonable expectations of the average business owner who

6    purchases CGL and excess liability policies." (Id. at 2.)

7         Rule 56(d), FED.R.CIV.P., provides that if a nonmovant shows that for specified

8    reasons it cannot present facts essential to justify its opposition, the court may defer

9    considering the motion and allow time for the nonmovant to obtain affidavits or declarations

10   or take discovery.

11        The Court did not rule on the motion for Rule 56(d) relief prior to the scheduled oral

12   argument, which occurred before the Court on May 22, 2013. (Doc. 53.) Thus, Plaintiff's

13   request to delay oral argument is now moot. As to Plaintiff's request to delay ruling on the

14   motion for partial summary judgment in order to obtain further expert testimony, the Court

15   notes that to date Plaintiff has made no attempt to file such testimony with the Court, nor any

16   motion to file supplemental exhibits in support of its opposition to Defendants' motion for

17   partial summary judgment.

18        Furthermore, the Court finds that the proposed expert testimony would be unnecessary

19   and irrelevant to the Court's decision here. As discussed above, the Court finds that Ikon had

20   no reasonable expectation of coverage for the spoliation suit based on the fact that

21   Defendants' conduct would not have induced a reasonable insurance purchaser to believe that

22   the CGL policy provided coverage for spoliation suits, and that Defendants' conduct did not

23   in fact induce Ikon to reasonably believe that it had such coverage. The addition of expert

24   testimony on the clarity and format of Defendants' policy form would be of no avail to

25   Plaintiff's argument, because Ms. Poole admitted that she did not review the policy form at

26   all, instead relying unreasonably on her subjective beliefs based on the insurance proposal.

27        Thus, the Court finds that Plaintiff's motion for Rule 56(d) relief is moot, and thus

28   will deny the motion. The Court notes that as a consequence of the Court's Order here, the

only remaining claim for adjudication in this case is Plaintiff's claim for breach of the covenant of good faith and fair dealing.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED granting in part and denying in part** Defendants' Motion for Partial Summary Judgment.  (Doc. 36.)

**IT IS FURTHER ORDERED** that the <u>Damron</u> agreement executed below is valid and enforceable against Defendants.

**IT IS FURTHER ORDERED** that Defendants had no duty to defend Ikon in the underlying spoliation suit under the CGL policy.

**IT IS FURTHER ORDERED denying as moot** Plaintiff's Motion for Rule 56(d) Relief.  (Doc. 51.)

**IT IS FURTHER ORDERED** setting the Final Pretrial Conference for **November 18, 2013 at 2:30, p.m.**  This matter appearing ready for trial, a Final Pretrial Conference shall be held in Courtroom 605, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003. The attorneys who will be responsible for the trial of the case shall attend the Final Pretrial Conference. Counsel shall bring their calendars so that trial scheduling can be discussed.

**IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys who will be responsible for the trial of the lawsuit shall prepare and sign a <u>Proposed Pretrial Order</u> and submit it to the Court on **October 25, 2013.**

**IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto. Statements made shall not be in the form of a question, but should be a concise narrative statement of each party's contention as to each uncontested and contested issue.

**IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that the Court will not allow the parties to offer any exhibits, witnesses, or other information that were not previously disclosed in accordance with the provisions of this Order and/or the

1   Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for
2   good cause.

3        **IT IS FURTHER ORDERED** directing the parties to exchange drafts of the
4   Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

5        **IT IS FURTHER ORDERED** that the parties shall file and serve all motions in
6   limine no later than <u>**October 25, 2013.**</u>  Each motion in limine shall include the legal basis
7   supporting it.  Responses to motions in limine are due <u>**November 1, 2013.**</u>  No replies will
8   be permitted.  The attorneys for all parties shall come to the Final Pretrial Conference
9   prepared to address the merits of all such motions.

10       **IT IS FURTHER ORDERED** directing the parties to complete the following tasks
11  by the time of the filing of the Proposed Pretrial Order if they intend to try the case before
12  a jury:

13       (1)     The parties shall <u>jointly</u> file a description of the case to be read to the jury.

14       (2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions.  The voir
15  dire questions shall be drafted in a neutral manner.  To the extent possible, the parties
16  shall stipulate to the proposed voir dire questions.  If the parties have any
17  disagreement about a particular question, the party or parties objecting shall state the
18  reason for their objection below the question.

19       (3)     The parties shall file a proposed set of <u>stipulated</u> jury instructions. The
20  instructions shall be accompanied by citations to legal authority.  If a party believes
21  that a proposed instruction is a correct statement of the law, but the facts will not
22  warrant the giving of the instructions, the party shall so state.  The party who believes
23  that the facts will not warrant the particular instruction shall provide an alternative
24  instruction with appropriate citations to legal authority.

25       (4)     Each party shall submit a form of verdict to be given to the jury at the end of
26  the trial.

27       **IT IS FURTHER ORDERED** directing the parties to submit their proposed joint
28  statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

1      **IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than

2 to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed

3 findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

4      **IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the

5 possibility of settlement and should settlement be reached, the parties shall file a Notice of

6 Settlement with the Clerk of the Court.

7      **IT IS FURTHER ORDERED** that this Court views compliance with the provisions

8 of this Order as critical to its case management responsibilities and the responsibilities of the

9 parties under Rule 1 of the Federal Rules of Civil Procedure.

10      DATED this 20th day of September, 2013.

11

12

13                         Stephen M. McNamee

14                  Senior United States District Judge